1

2

3

4

5

6

7

8                           UNITED STATES DISTRICT COURT

9                           EASTERN DISTRICT OF CALIFORNIA

10

11   CHESSY S. DONNELLY,                      Case No. 1:21-cv-01117-CDB (SS)

12                 Plaintiff,                  ORDER GRANTING PLAINTIFF'S
                                              MOTION FOR SUMMARY JUDGMENT;
13          v.                                DENYING DEFENDANT'S CROSS-
                                              MOTION FOR SUMMARY JUDGMENT
14   COMMISSIONER OF SOCIAL SECURITY,
                                              (Docs. 11, 15, 16)
15                 Defendant.

16

17

18          Plaintiff Chessy S. Donnelly ("Plaintiff") seeks judicial review of a final decision of the

19   Commissioner of Social Security ("Commissioner" or "Defendant") denying her application for

20   disability benefits under the Social Security Act.  (Doc. 1).  The matter is currently before the Court

21   on the parties' briefs, which were submitted without oral argument.  (Docs. 11, 15, 16).  Upon

22   review of the Administrative Record ("AR") and the parties' briefs, the Court finds and rules as

23   follows.

24   I.     BACKGROUND

25          A. Administrative Proceedings and ALJ's Decision

26          On January 26, 2018, Plaintiff filed a Title II application for disability insurance benefits.

27   (AR 235-236).  Plaintiff's application was denied and, after reconsideration, was denied again.  (AR

28   97-113, 114-130).  Plaintiff then filed a request for a hearing before an Administrative Law Judge

("ALJ").  (AR 144-147).  A hearing convened on June 18, 2019, before ALJ Jane M. Maccione was postponed to allow Plaintiff to retain counsel.  (AR 81-96).  On November 12, 2019, the assigned ALJ, Ms. Maccione, held a hearing; Plaintiff and her counsel attended, as did vocational expert Nancy Rynd.  (AR 49-80).  The ALJ issued her decision on November 27, 2019, finding Plaintiff not disabled.  (AR 26-48).  On August 11, 2020, the Appeals Council found no basis for changing the ALJ's decision.  (AR 6-12, 231-234).  Thereafter, following the Appeals Council's grant of an extension of time (AR 1-3), Plaintiff filed the instant action.

In her decision, the ALJ used the five-step sequential evaluation process promulgated by the Social Security Administration for determining whether an individual is disabled.  (AR 30-31) (citing 20 C.F.R. 404.1520a).  The ALJ found that Plaintiff had not engaged in substantial gainful activity since January 13, 2016, the alleged onset date.  The ALJ concluded that Plaintiff had the following severe impairments: disc protrusion and multilevel arthritis of the cervical spine; lumbar spine disorder status post surgery; bilateral trochanteric bursitis; osteoarthritis of the bilateral hips; chronic vertigo; and migraine headaches.  The ALJ also found that, beginning June 1, 2018, Plaintiff had the following additional severe impairments: rheumatoid arthritis; fibromyalgia; and cervical radiculopathy.  (AR 31).

The ALJ noted that Plaintiff also had the following non-severe impairments: osteoarthritis of the bilateral hands, depression, and anxiety.  (AR 31-34).  After identifying these impairments, the ALJ found that Plaintiff did not have an impairment, or any combination of impairments, that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (AR 34).

The ALJ reached this determination by considering the four broad functional areas of mental functioning listed in the "paragraph B" criteria.[1]  The first functional area is understanding,

---

[1] The "paragraph B criteria" evaluates mental impairments in the context of four broad areas of functioning: (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; and (4) adapting or managing oneself.  20 C.F.R. § Pt. 404, Subpt. P, App. 1.  The severity of the limitation a claimant has in each of the four areas of functioning is identified as either "no limitation," "mild," "moderate," "marked," or "extreme."  *Id*.  To satisfy the paragraph B criteria, a claimant must have an "extreme" limitation in at least one of the areas of mental functioning, or a "marked" limitation in at least two of the areas of mental functioning.  *Id*.  An "extreme" limitation is the inability to function independently, appropriately, or effectively, and on a sustained basis.  *Id*.  A "marked" limitation is a seriously limited ability to function independently, appropriately, or

remembering, or applying information. The second functional area is interacting with others.  The third functional area is concentrating, persisting, or maintaining pace.  The fourth functional area is adapting or managing oneself.  The ALJ found that Plaintiff had no limitations in the first two functional areas and mild limitations in the third and fourth functional areas.  (AR 32-33).  Next, the ALJ discussed the opinion of psychologist Kelly T. Pham, who conducted a mental consultative examination of Plaintiff on April 4, 2018.  The ALJ found as follows:

> Kelly T. Pham, Ph.D., who conducted the mental consultative examination on April 4, 2018, concluded that the claimant had an adequate ability to perform simple and complex tasks, maintain regular attendance, work without special or additional supervision, accept instructions from supervisors, and interact with others.  Dr. Pham also stated that the claimant's ability to perform work activities on a consistent basis, complete a normal workday or workweek, and deal with usual work stress was no more than mildly to moderately limited.  The undersigned finds that this opinion allowing the claimant to perform some work is largely persuasive because it is supported by the adequate mental functioning that the claimant exhibited at Dr. Pham's examination.  In addition, the opinion is supported by the neuropsychological test results showing average intellectual and memory function.
>
> Moreover, the opinion is consistent with the claimant's generally adequate daily living activities, her adequate social activities, and her Hawaii trip and volunteer work in 2018, which indicate some mental capacity.  Furthermore, Dr. Pham has specialized expertise on mental impairments and the opinion is based upon objective testing and a thorough in-person evaluation of the claimant.  However, the opinion somewhat understates the claimant's ability to perform work activities on a consistent basis, complete a normal workday or workweek, and deal with usual work stress.  This portion of the opinion is not persuasive because it is inconsistent with the claimant's generally adequate mental functioning documented in the treatment records.  Also, there is little evidence that the claimant has had any trouble showing up for medical appointments.  Finally, the claimant has received little specialized mental health treatment, such as counseling or psychotherapy, since the alleged disability onset date.  She did not have a psychiatric evaluation until October 2019.  There is no definitive evidence that

---

effectively, and on a sustained basis. *Id.*  A "moderate" degree of mental limitation means that functioning in this area independently, appropriately, effectively, and on a sustained basis is "fair."  *Id.*  And a "mild" degree of mental limitation means that functioning in this area independently, appropriately, effectively, and on a sustained basis is "slightly limited."  *Id.*; *see Carlos v. Comm'r of Soc. Sec.*, 1:21-cv-00517-SAB, 2023 WL 1868870, at *4 n.7 (E.D. Cal. Feb. 9, 2023).

1   she had difficulty obtaining specialized mental health treatment as
2   necessary before October 2019.

3   (AR 33-34) (citations omitted).   The ALJ also addressed the opinions of the state agency

4   psychological consultants and Plaintiff's physician Rana Rand.  The ALJ found as follows:

5   The State agency psychological consultants found that the claimant
6   had moderate limitation in concentrating, persisting, and
    maintaining pace and was limited to simple work.  Rana Rand, D.O.,
7   the claimant's own physician, stated that the claimant had
    limitations in her ability to perform activities requiring anxiety-
8   provoking social interaction.  The undersigned finds that these
9   opinions understate the claimant's mental capacity and are not
    persuasive because they are contradicted by the generally adequate
10  mental functioning that the claimant exhibited during the
11  adjudicative period, as discussed above.  In addition, the opinions
    are contradicted by the neuropsychological test results showing
12  average intellectual and memory function.  Moreover, the claimant
    has received little specialized mental health treatment, such as
13  counseling or psychotherapy, since the alleged disability onset date.
14  Furthermore, the opinions are inconsistent with the claimant's
    generally adequate daily living activities, her adequate social
15  activities, and her Hawaii trip and volunteer work in 2018.

16  (AR 34) (citations omitted).

17       The ALJ found Plaintiff had the residual functional capacity ("RFC") to perform light work.

18  From January 13, 2016, to May 31, 2018, the ALJ found the following RFC applicable:

19  After careful consideration of the entire record, the undersigned
20  finds that, from January 13, 2016 through May 31, 2018, the
    claimant had the residual functional capacity to perform light work
21  as defined in 20 CFR 404.1567(a), except she was limited to
    frequent climbing of ramps and stairs; she could not climb ropes,
22  ladders, or scaffolds.  She was limited to frequent kneeling and
    crouching and to occasional stooping and crawling; she could not
23  balance.  She was limited to occasional overhead reaching with her
    bilateral upper extremities.  In addition, she required protection from
24  workplace hazards, such as unprotected heights and dangerous
25  moving mechanical parts.

26  (AR 35).   After summarizing the medical evidence, the ALJ determined that the Plaintiff's

27  impairments could reasonably be expected to cause some of her alleged symptoms but the intensity,

28  persistence, and limiting effects of those symptoms were not consistent with the medical evidence

4

in the record. (AR 35-38). The ALJ found persuasive the state agency medical consultants' findings, except that the opinions overstated Plaintiff's ability to climb ladders, ropes, and scaffolds and balance and work around hazards, as they did not adequately consider Plaintiff's subjective complaints regarding her chronic vertigo. (AR 37). The ALJ then discounted some of the limitations in Dr. Rand's opinion:

> Rana Rand, D.O., the claimant's own physician, stated that the claimant was limited to less than sedentary exertion, would need to be allowed to change positions at will, should avoid concentrated exposure to pulmonary irritants, and would be absent from work 4 times per month. Dr. Rand also stated that the claimant had limitations in her ability to perform activities requiring sitting, standing, lifting, and repetitive activities of any kind. With respect to the period prior to June 2018, the undersigned finds that this opinion understates the claimant's physical capacity and is not persuasive because it is not supported by the doctor's own treatment notes, which did not document strong findings or signs that support such extreme limitations. In fact, overall, the medical records documented generally normal musculoskeletal and neurologic function. In addition, the opinion is contradicted by the cervical spine imaging, brain imaging, and VNG, which showed no more than mild findings. Moreover, the opinion is contradicted by the lack of electrodiagnostic findings concerning the claimant's radicular symptoms prior to June 2018. Furthermore, the opinion is inconsistent with the admitted effectiveness of the claimant's lumbar spine surgery, physical therapy, and migraine and vertigo treatment. Finally, the opinion is inconsistent with the claimant's admitted activities of daily living and her Hawaii trip.

(AR 37-38) (citations omitted). The ALJ proceeded to discuss lay witness testimony provided by Plaintiff's mother:

> The claimant's mother completed a third party function report, which largely mirrors the claimant's allegations. The description of the claimant's daily activities is persuasive because the observations came from frequent interactions with the claimant. However, the assessment of the claimant's functioning is not persuasive because the claimant's friend is not an acceptable medical source and lacks the medical proficiency to render a reliable opinion on the claimant's limitations. The undersigned finds the observations and opinions of trained medical professionals to be more persuasive. In addition, the assessment is inconsistent with the generally normal musculoskeletal and neurologic function documented in the medical records.

(AR 38) (citation omitted). The ALJ found that Plaintiff was unable to perform any past relevant

work and was not disabled from the period of January 13, 2016, to May 31, 2018, and thus the transferability of job skills was not material to the determination of disability.  The ALJ listed office clerk, furniture rental clerk, and order caller as occupations Plaintiff could perform during the period from January 13, 2016, to May 31, 2018.  (AR 38-39).  The ALJ issued another RFC for the period of June 1, 2018, to the present, finding that the previous reasons regarding the earlier period continued to apply but that Plaintiff experienced new impairments after that date:

> After careful consideration of the entire record, the undersigned finds that, beginning on June 1, 2018, the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a), except she is able to lift and carry 10 pounds both frequently and occasionally.  Her standing and/or walking are limited to 2 hours, cumulatively, during the workday. She is limited to occasional climbing of ramps and stairs; she cannot climb ropes, ladders, or scaffolds.  She is limited to occasional balancing, stooping, kneeling, crouching, and crawling. She cannot reach overhead bilaterally.  She is limited to frequent reaching in all other directions, bilaterally.  She is limited to occasional pushing and/or pulling, bilaterally.  She is limited to frequent fingering, bilaterally. She cannot tolerate concentrated exposure to extremes of heat or cold.  She requires a noise environment of moderate or less.  In addition, she must be protected from workplace hazards, such as unprotected heights and dangerous moving mechanical parts.

(AR 40).  The ALJ determined anew that the state agency medical consultants' opinions overstated Plaintiff's physical abilities and did not adequately consider her chronic vertigo.  (AR 41).  The ALJ further discussed Dr. Rand's opinions:

> With respect to the period beginning on June 1, 2018, Dr. Rand's opinion is not persuasive.  Even though the recent medical evidence supports further restrictions, her physical functioning continues to be adequate in general and physical therapy has been effective, as discussed in detail above.  In fact, beginning in late 2018, she started driving short distances and doing volunteer work.  The undersigned has considered the diagnoses of new impairments and worsening of the cervical spine disorder and has restricted the claimant to sedentary exertion and assessed additional functional limitations.

(AR 41) (citations omitted).  The ALJ concluded that, beginning June 1, 2018, Plaintiff is unable to perform any past relevant work and that jobs existed in significant numbers in the national economy that she could perform, providing election clerk, document preparer, and call-out

operator.  (AR 42).  The ALJ concluded that Plaintiff was not disabled from the alleged onset date to the date of the decision.  (AR 43).

### B.  Medical Record and Hearing Testimony

The relevant hearing testimony and medical record were reviewed by the Court and will be referenced below as necessary to this Court's decision.

## II.     STANDARD OF REVIEW

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g).  The scope of review under § 405(g) is limited; the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error."  *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012).  "Substantial evidence" means "relevant evidence that a reasonable mind might accept as adequate to support a conclusion."  *Id*. at 1159 (quotation and citation omitted).  Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance."  *Id*. (quotation and citation omitted).  "[I]t is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995) (citation omitted).  In determining whether the standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation.  *Id.*

The court will review only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which she did not rely.  Social Security Act § 205, 42 U.S.C. § 405(g).  In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner.  "The court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation."  *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008).  Further, a district court will not reverse an ALJ's decision on account of an error that is harmless.  *Id.*  An error is harmless where it is "inconsequential to the [ALJ's] ultimate nondisability determination."  *Id*. (quotation and citation omitted).  The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed.  *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

A claimant must satisfy two conditions to be considered "disabled" and eligible for benefits

within the meaning of the Social Security Act.  First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. § 1382c(a)(3)(A).  Second, the claimant's impairment must be "of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  42 U.S.C. § 1382c(a)(3)(B).

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria.  *See* 20 C.F.R. § 416.920(a)(4)(i)-(v).  At step one, the Commissioner considers the claimant's work activity.  20 C.F.R. § 416.920(a)(4)(i).  If the claimant is engaged in "substantial gainful activity," the Commissioner must find that the claimant is not disabled.  20 C.F.R. § 416.920(b).

If the claimant is not engaged in substantial gainful activity, the analysis proceeds to step two.  At this step, the Commissioner considers the severity of the claimant's impairment.  20 C.F.R. § 416.920(a)(4)(ii).  If the claimant suffers from "any impairment or combination of impairments which significantly limits [his or her] physical or mental ability to do basic work activities," the analysis proceeds to step three.  20 C.F.R. § 416.920(c).  If the claimant's impairment does not satisfy this severity threshold, however, the Commissioner must find that the claimant is not disabled.  *Id.*

At step three, the Commissioner compares the claimant's impairment to impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity.  20 C.F.R. § 416.920(a)(4)(iii).  If the impairment is as severe or more severe than one of the enumerated impairments, the Commissioner must find the claimant disabled and award benefits.  20 C.F.R. § 416.920(d).

If the severity of the claimant's impairment does not meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess the claimant's "residual functional capacity."  Residual functional capacity (RFC), defined generally as the claimant's

ability to perform physical and mental work activities on a sustained basis despite his or her limitations (20 C.F.R. § 416.945(a)(1)), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past (past relevant work). 20 C.F.R. § 416.920(a)(4)(iv). If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 416.920(f). If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy. 20 C.F.R. § 416.920(a)(4)(v). In making this determination, the Commissioner must also consider vocational factors such as the claimant's age, education, and past work experience. *Id.* If the claimant is capable of adjusting to other work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 416.920(g)(1). If the claimant is not capable of adjusting to other work, the analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits. *Id.*

The claimant bears the burden of proof at steps one through four above. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). If the analysis proceeds to step five, the burden shifts to the Commissioner to establish that (1) the claimant is capable of performing other work; and (2) such work "exists in significant numbers in the national economy." 20 C.F.R. § 416.960(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

## III. ISSUES AND ANALYSIS

Plaintiff seeks judicial review of the Commissioner's final decision denying her application. (Doc. 1). Plaintiff raises the following issues:

1. The ALJ erred by using the incorrect standard of review and improperly rejecting the medical opinions of record;

2. The ALJ improperly rejected Plaintiff's symptom testimony;

3. The ALJ improperly rejected lay witness testimony; and

4. The ALJ improperly omitted medical opinion limitations, Plaintiff's symptom testimony, and the lay witness testimony from the RFC and hypotheticals posed to the

vocational expert.  (Doc. 11 at 12-20).

**A. Whether the ALJ Erred by Using An Incorrect Standard of Review and Improperly Rejecting the Medical Opinions of Record**

Plaintiff asserts that the ALJ improperly rejected the opinions of Plaintiff's physician Rana Rand as the record supported Dr. Rand's findings and established that Plaintiff was disabled. Plaintiff further argues that the ALJ improperly rejected the opinions of agency psychologist Kelly Pham in regard to Plaintiff's mental limitations.  As to both Drs. Rand and Pham, Plaintiff asserts that the ALJ failed to provide specific and legitimate reasons for rejecting their opinions.  (Doc. 11 at 12-16).

### i.  Standard of Review

Plaintiff incorrectly advances a legal standard that applied in the Ninth Circuit to cases filed before March 27, 2017.  Because Plaintiff filed her application for benefits after that date, Plaintiff's claim for benefits is governed by the agency's "new" regulations concerning how ALJs must evaluate medical opinions.  20 C.F.R. § 404.1520c.

Previously, the Ninth Circuit required ALJs to provide clear and convincing or specific and legitimate reasons for rejecting the medical opinions of treating or examining physicians.  In light of the more recent, operative regulations, these standards no longer apply and the ALJ was not required to provide "specific and legitimate reasons" to discount any medical opinions.  In *Woods v. Kijakazi*,[2] the Ninth Circuit explained:

> As a threshold matter, we must decide whether recent changes to the Social Security Administration's regulations displace our longstanding case law requiring an ALJ to provide 'specific and legitimate' reasons for rejecting an examining doctor's opinion.  We conclude that they do.  For claims subject to the new regulations, the former hierarchy of medical opinions—in which we assign presumptive weight based on the extent of the doctor's relationship with the claimant—no longer applies.  Now, an ALJ's decision, including the decision to discredit any medical opinion, must simply be supported by substantial evidence.

*Id.* at 787.  Plaintiff cites cases for the proposition that the "specific and legitimate" standard still applies.  (Doc. 11 at 12-13).  These cases predate *Woods* and are, therefore, inapplicable.

---

[2] 32 F.4th 785 (9th Cir. 2022).

The operative regulations set "supportability" and "consistency" as "the most important factors" when determining a medical opinion's persuasiveness.  20 C.F.R. § 404.1520c(b)(2).  Although the regulations eliminate the "physician hierarchy," deference to specific medical opinions, and assigning "weight" to a medical opinion, the ALJ must still "articulate how [they] considered the medical opinions" and "how persuasive [they] find all of the medical opinions."  20 C.F.R. § 404.1520c(a)–(b).  In short, "the decision to discredit any medical opinion, must simply be supported by substantial evidence."  *Woods*, 32 F.4th at 787.

In conjunction with this requirement, "[t]he agency must 'articulate ... how persuasive' it finds 'all of the medical opinions' from each doctor or other source, and 'explain how [it] considered the supportability and consistency factors' in reaching these findings."  *Id.* at 792 (citing 20 C.F.R. § 404.1520c(b)); *see also id.* § 416.920c(b).  "Supportability means the extent to which a medical source supports the medical opinion by explaining the 'relevant ... objective medical evidence.'"  *Id.* at 791-792 (quoting 20 C.F.R. § 404.1520c(c)(1)); *see also id.* § 416.920c(c)(1).  "Consistency means the extent to which a medical opinion is 'consistent … with the evidence from other medical sources and nonmedical sources in the claim.'"  *Id.* at 792 (quoting 20 C.F.R. § 404.1520c(c)(2)); *see also id.* § 416.920c(c)(2).

### ii.  Dr. Rand's Opinion

Dr. Rand's opinion sets forth a number of limitations in a form dated September 10, 2019.  (AR 717-719).  Dr. Rand states that Plaintiff, at maximum, can lift and carry less than ten pounds on an occasional basis and less than ten pounds on a frequent basis.  She can stand and walk less than two hours and sit less than two hours.  (AR 717).  Dr. Rand provides that Plaintiff must alternate between sitting, standing, and walking very frequently and can occasionally twist, stoop, crouch, and climb stairs but may never climb ladders.  She must avoid all exposure to extreme heat, as well as heights, machinery, and other hazards, and moderate exposure to extreme cold.  In assessing the limitations, Dr. Rand notes Plaintiff's balance deficits, anxiety, metabolic issues, tremors, and pain.  (AR 718-719).

Plaintiff asserts that Dr. Rand's examination notes, as well as the imaging studies, document signs of carpal tunnel, significant degenerative changes in Plaintiff's cervical and lumbar spine,

1   rheumatoid arthritis, fibromyalgia, migraines, vertigo, and anxiety.  (Doc. 11 at 14).  Plaintiff states

2   that surgery was effective for Plaintiff's lumbar spine, as noted by the ALJ, but did not address any

3   of Plaintiff's other impairments.  Plaintiff asserts that, though physical therapy reduced the

4   frequency and severity of vertigo and migraines, it did not eliminate them such that they no longer

5   caused limitations.  Lastly, Plaintiff provides that the ALJ improperly discounted Dr. Rand's

6   opinions by citing to Plaintiff's vacation to Hawaii.  *Id.* at 15.

7        A review of the record supports a finding that the ALJ's discounting of Dr. Rand's

8   limitations is supported by substantial evidence.  The ALJ formulated two RFCs, discussing Dr.

9   Rand's opinion in regard to each: one for the period of January 13, 2016, through May 31, 2018

10  (hereinafter the "first RFC"), and another for the period of June 1, 2018, and after (hereinafter the

11  "second RFC").

12       When discounting Dr. Rand's opinion in connection with the first RFC, the ALJ stated that

13  the opinion "understated claimant's physical capacity and is not persuasive because it is not

14  supported by the doctor's own treatment notes, which did not document strong findings or signs

15  that support such extreme limitations.  In fact, overall, the medical records documented generally

16  normal musculoskeletal and neurologic function."  (AR 37) (citing Exhibits 1F, 2F, 3F, 4F, 9F,

17  13F, and 17F).  The ALJ continued, noting that the opinion "is contradicted by the cervical spine

18  imaging, brain imaging, and VNG, which showed no more than mild findings."  (AR 38) (citing

19  Exhibits 1F, 2F, and 17F).  Next, the ALJ found that the opinion was "contradicted by the lack of

20  electrodiagnostic findings concerning the claimant's radicular symptoms prior to June 2018 …

21  [and] with the admitted effectiveness of the claimant's lumbar spine surgery, physical therapy, and

22  migraine and vertigo treatment."  (AR 38) (citing Exhibits 1F, 2F, 3F, 15F, 17F, and Plaintiff's

23  hearing testimony).  Lastly, the ALJ noted that the opinion was "inconsistent with the claimant's

24  admitted activities of daily living and her Hawaii trip."  (AR 38) (citing Exhibits 4E, 7F, 9F, and

25  Plaintiff's hearing testimony).

26       Later in her decision, concerning the second RFC, the ALJ found that the above reasons

27  continued to apply, except that Plaintiff had been "diagnosed with new impairments and her

28  cervical spine disorder has progressed."  The ALJ noted that Plaintiff had been diagnosed with

1    rheumatoid arthritis and fibromyalgia, which caused pain, tenderness, and fatigue; had begun

2    receiving methotrexate injections; had elevated inflammatory markers; evidenced significant

3    neuropathy in her upper extremities; and presented with moderate to severe foraminal stenosis and

4    mild to moderate spinal stenosis.  (AR 40).

5        Regarding Dr. Rand's limitations, the ALJ found them unpersuasive.  She noted that

6    "though the recent medical evidence supports further restrictions, her physical functioning

7    continues to be adequate in general and physical therapy has been effective, as discussed in detail

8    above … she started driving short distances and doing volunteer work."  The ALJ "restricted the

9    claimant to sedentary exertion and assessed additional functional limitations."  (AR 41).

10        The record evidences numerous clinical visits and procedures regarding Plaintiff's back in

11    2016 and 2017.  For example, Plaintiff had a computed tomography ("CT") scan of her neck on

12    June 20, 2016, with largely unremarkable findings aside from mild degenerative disc disease.  (AR

13    468).  Plaintiff had a CT scan of her cervical spine on September 28, 2016, finding no fracture after

14    a fall.  (AR 454).  That same day, she had a scan of her thoracic spine, finding no fracture and a

15    mild acute compression deformity, and a scan of her lumbar spine, with no findings.  (AR 456-

16    457).  Plaintiff had an MRI of her lumbar spine on January 29, 2017, with largely unremarkable

17    and mild findings.  (AR 447).  Plaintiff had an MRI of her cervical spine on April 28, 2017, finding

18    small central disc protrusions and foraminal narrowing.  (AR 434-435).  Plaintiff had lumbar

19    surgery on July 20, 2017, with the record noting Plaintiff had failed all conservative treatment.  (AR

20    357-358).

21        Other records from 2017 evidence Plaintiff experiencing severe migraines, dizzy spells, and

22    vertigo.  For example, on February 6, 2017, she presented to physician Stephen C. Lee with

23    dizziness and impaired balance; an MRI scan of her head was normal.  (AR 348-349).  On May 1,

24    2017, Dr. Lee noted that Plaintiff's dizziness had not improved and that Imitrex injections worked

25    well for her.  A CT scan of her head and videonystagmography ("VNG") test were normal.  (AR

26    346).  On July 12, 2017, Dr. Lee noted that the headaches were less frequent and Imitrex injections

27    and Topamax tablets worked well.  (AR 343).  On December 13, 2017, Dr. Lee noted that the

28    Imitrex injections worked well, but Plaintiff continued to experience migraines, vertigo, and

1    nausea.  (AR 341).

2         Starting late-2017, Plaintiff received physical therapy which resulted in notable

3    improvement.  She was seen for thirteen therapy visits from September 12, 2017, to January 15,

4    2018.  She had "been making good progress" on her back but did not start on her balance issues.

5    She was discharged on May 30, 2018, for missing four appointments.  (AR 817).  She began therapy

6    again on July 30, 2018.  (AR 810-816).  On December 10, 2018, physical therapist Anne B. Jacobs

7    recorded that Plaintiff felt she had "made a lot of improvement," and that her balance, headaches,

8    and visual symptoms had improved, though she continued to have anxiety but felt she had more

9    control over it.  Dr. Jacobs noted that Plaintiff had begun driving short distances with her husband

10   and had "volunteered a few days at work."  (AR 792-793).  On August 5, 2019, Plaintiff reported

11   a reduction of pain and tension in her periscapular region.  (AR 787).  Physical therapist Edward J.

12   Leers noted that Plaintiff's headaches were reduced to one per week but that she continued to

13   experience pain in her neck, hips, and back.  (AR 783).  Dr. Leers prepared the second most recent

14   physical therapy note in the record, dated September 17, 2019, where he recounted that Plaintiff

15   expressed she "has no concerns about her balance, it has improved greatly and she has had previous

16   course of therapy to work on balance with good result."  (AR 781).

17        The ALJ referenced Plaintiff's activities of daily living and her vacation to Hawaii when

18   discounting Dr. Rand's opinions.  (AR 38).  An ALJ properly may consider a plaintiff's reported

19   activities in evaluating the persuasiveness of medical opinions.  *See Leonard v. Comm'r of Soc.

20   Sec.*, No. 1:21-cv-00627-EPG, 2022 WL 4123990, at *4 (E.D. Cal. Sept. 9, 2022) ("when

21   considered in conjunction with the rest of the ALJ's reasoning, the ALJ's reliance on Plaintiff's

22   daily activities—caring for her cat, preparing simple meals, cleaning, and sometimes administering

23   her father's insulin, etc.—is a reasonable basis to discount the severe limitations assessed [in a

24   medical opinion]").

25        The record does not provide any significant detail regarding Plaintiff's vacation to Hawaii,

26   appearing only briefly, for example in a medical record dated April 11, 2018.  (AR 660).  However,

27   the ALJ did not rely solely on Plaintiff's Hawaii trip or daily activities but included them as an

28   additional reason to discount Dr. Rand's opinions, after discussing the medical record evidence.

As discussed above, the ALJ evaluated numerous other factors as well, such as extensive medical records relating to Plaintiff's course of treatment over the years, and her back surgery, imaging results, and physical therapy. This analysis comports with the applicable standards setting forth "supportability" and "consistency" as the most important factors when evaluating opinions in the record. *See* 20 C.F.R. § 404.1520c(b)(2).

The ALJ did not reject Dr. Rand's limitations wholesale but, rather, concluded that the limitations therein understated Plaintiff's abilities, and accordingly, incorporated certain restrictions into the RFC consistent with her analysis. As such, the ALJ's discounting of Dr. Rand's limitations is supported by substantial evidence.

### iii.  Dr. Pham's Opinion

Dr. Pham found that Plaintiff is "mildly to moderately limited" in her ability to perform work activities on a consistent basis, her ability to complete a normal workday or workweek without interruptions, and her ability to deal with the usual stresses encountered in a competitive work environment. Dr. Pham found that Plaintiff is "not significantly limited to mildly limited" in her ability to maintain regular attendance in the workplace. And Dr. Pham found that Plaintiff is "not significantly limited" in her ability to understand, remember, and perform simple and complex written and oral instructions; her ability to perform work activities without special or additional supervision; her ability to accept instructions from supervisors; and her ability to interact with coworkers and with the public. (AR 637-638).

The ALJ found Dr. Pham's opinion largely persuasive, supported by the findings in Dr. Pham's examination and its neuropsychological test results, particularly when considering Dr. Pham's specialized expertise regarding mental impairments. The ALJ also found the opinion consistent with Plaintiff's daily activities. (AR 33-34). However, the ALJ concluded that the opinion somewhat understated Plaintiff's ability to perform consistent work activities, complete a normal workday or workweek, and deal with usual workplace stress. The ALJ found that:

> This portion of the opinion is not persuasive because it is inconsistent with the claimant's generally adequate mental functioning documented in the treatment records. Also, there is little evidence that the claimant has had any trouble showing up for medical appointments. Finally, the claimant has received little

15

specialized mental health treatment, such as counseling or psychotherapy, since the alleged disability onset date. She did not have a psychiatric evaluation until October 2019. There is no definitive evidence that she had difficulty obtaining specialized mental health treatment as necessary before October 2019.

(AR 34) (citations omitted).

Regarding the ALJ's finding Plaintiff had "little" specialized mental health treatment, Plaintiff asserts that she did, in fact, have mental health treatment, including medications from her primary care doctors. She argues that an "ability to attend medical appointments does not demonstrate an ability to attend work on a regular and continuing basis for 5 days per week, 8 hours per day, or an equivalent schedule. It does not show an ability to remain in the workplace for a full day." She states that, thus, the ALJ failed to meet the relevant standard for rejecting the opinion of Dr. Pham. (Doc. 11 at 15-16).

Concurrent with her evaluation of Dr. Pham's opinion, the ALJ considered the "paragraph B" criteria, finding Plaintiff had "mild" limitations in the functional areas of concentrating, persisting, or maintaining pace and in adapting or managing herself, with no limitations in understanding, remembering, or applying information and in interacting with others. (AR 32-33). In her discussion, the ALJ provided further citations regarding adequate mental functioning documented in the treatment records. (AR 33) (citing Exhibits 1F, 2F, 3E, 3F, 4E, 4F, 7F, 9F, 10F, 12F, 13F, 16F, and 18F).

Here, the record evidences Plaintiff being prescribed with medication to manage her depression and anxiety. For example, a record dated February 6, 2017, and signed by Dr. Lee notes that Plaintiff took Zoloft, diazepam, and gabapentin. (AR 348). Another dated May 17, 2017, notes that Zoloft did not help Plaintiff's depression and she began Cymbalta. (AR 345). Another from June 15, 2017, notes that she was switching to Lexapro. (AR 344). Later, on October 18, 2018, Dr. Rand noted that that Plaintiff was being referred back to family nurse practitioner Sara Walsh for "consideration of anxiety treatment," noting that counseling was recommended. (AR 742). On November 30, 2018, Dr. Rand prescribed a trial of over-the-counter supplement Relora. (AR 738). On July 19, 2019, Dr. Rand noted that Plaintiff recently began lorazepam, which

16

provided mild benefit. (AR 731). She notes that Plaintiff takes venlafaxine and previously took Cymbalta in 2017 and, prior to that, Zoloft. (AR 734).

However, the record supports the ALJ's citations as to Plaintiff's affect and behavior during appointments, as well as lack of counseling or therapy. (*See, e.g.*, AR 397, 401, 408, 415, 426, 560, 564, 570, 573, 576, 580, 586, 590, 596, 599, 655, 658, 664, 725, 729, 741, 793, 866, 870, 876, 880–881, 884, 887).

State agency physician F. Mateus found that Plaintiff had only mild limitations in understanding, remembering, or applying information; interacting with others; and adapting or managing oneself, as well as moderate limitations in concentrating, persisting, or maintaining pace. (AR 105). Dr. Mateus concluded Plaintiff's "main problem is physical" and that she "retained the ability to sustain simple and detailed but not complex tasks within her physical tolerance." (AR 105-106). In the mental residual functional capacity assessment, Dr. Mateus notes that Plaintiff is "mentally capable of sustaining at least simple tasks within her physical tolerance" and that her "main problem is physical." (AR 110). Upon reconsideration, state agency psychologist Janet Anguas-Keiter found substantially the same limitations. (AR 122, 127).

The ALJ accurately cited the record when noting that Plaintiff did not have any psychiatric evaluation or consultation until one was scheduled for October 2, 2019. (AR 32, 34; *see* AR 721). Dr. Rand noted on August 29, 2019, that Plaintiff was willing to see a psychiatrist for further evaluation of her anxiety, and had seen one once after a suicide attempt, noting that Plaintiff had no suicidal ideation or intention at the time. (AR 724). On September 10, 2019, Dr. Rand noted that Plaintiff's PHQ-9 score had increased from 12 to 16, but that Plaintiff did not endorse worsened mood nor any suicidal ideation or intention. (AR 722-723).

As such, the ALJ's discounting of Dr. Pham's limitations is supported by substantial evidence. *See Perez v. O'Malley*, No. 2:23-CV-00396-JDP (SS), 2024 WL 1095762, at *6–7 (E.D. Cal. Mar. 13, 2024) (finding substantial evidence supported the ALJ's rejection of moderate and marked limitations where "plaintiff's mental status examinations yielded mostly normal results and that his overall mental health care primarily consisted of medication management" and after plaintiff stopped attending "counseling in March 2018, there are no records of any further

1    psychiatric care that involved consistent, significant treatment with a mental health professional").

2        Insofar as Plaintiff advances another rational interpretation of the record, "[w]here evidence

3    is susceptible to more than one rational interpretation, the ALJ's decision should be upheld." *Orn*

4    *v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (quotation omitted).

5        **B.  Whether the ALJ Erred by Improperly Rejecting Plaintiff's Symptom Testimony**

6        An ALJ engages in a two-step analysis when evaluating a claimant's testimony regarding

7    subjective pain or symptoms. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007).  The

8    ALJ must determine whether there is "objective medical evidence of an underlying impairment

9    which could reasonably be expected to produce the pain or other symptoms alleged." *Id.*

10   (quotations omitted).  "The claimant is not required to show that this impairment could reasonably

11   be expected to cause the severity of the symptom he has alleged; he need only show that it could

12   reasonably have caused some degree of the symptom." *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th

13   Cir. 2009) (internal quotation marks omitted).

14       Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the

15   ALJ can only reject the claimant's testimony about the severity of the symptoms if [the ALJ] gives

16   specific, clear and convincing reasons for the rejection." *Ghanim v. Colvin*, 763 F.3d 1154, 1163

17   (9th Cir. 2014) (internal citations and quotations omitted).  "General findings are insufficient;

18   rather, the ALJ must identify what testimony is not credible and what evidence undermines the

19   claimant's complaints." *Id.*; *see Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002) ("[T]he

20   ALJ must make a credibility determination with findings sufficiently specific to permit the court to

21   conclude that the ALJ did not arbitrarily discredit claimant's testimony.").

22       However, "[t]he standard isn't whether [the] court is convinced, but instead, whether the

23   ALJ's rational is clear enough that it has the power to convince." *Smartt v. Kijakazi*, 53 F.4th 489,

24   499 (9th Cir. 2022).  An ALJ's reasonings as to subjective testimony "must be supported by

25   substantial evidence in the record as a whole." *Johnson v. Shalala*, 60 F.3d 1428, 1433 (9th Cir.

26   1995); *see Carmickle v. Comm'r, SSA*, 533 F.3d 1155, 1161 (9th Cir. 2008) ("Accordingly, our

27   next task is to determine whether the ALJ's adverse credibility finding of Carmickle's testimony is

28   supported by substantial evidence under the clear-and-convincing standard.").

Plaintiff asserts that the ALJ cited the medical evidence of record "generally as being inconsistent with the degree of impairment Plaintiff alleged, but does not identify specific aspects of Plaintiff's testimony which are actually inconsistent with any specific portion of the medical record." (Doc. 11 at 17). Defendant counters that the ALJ did, in fact, identify specific testimony and evidence of record that was inconsistent with Plaintiff's symptom testimony. (Doc. 15 at 12-17).

The ALJ found as follows:

> The claimant complains of chronic neck and back pain that radiates to the upper and lower extremities, respectively, causing pain, numbness, and weakness. She also complains of bilateral hip pain, dizziness, and migraine headaches. She allegedly has difficulties with physical exertion, postural activities, reaching, and sleep. She allegedly needs to nap or rest often throughout the day. Her medications cause drowsiness, sleepiness, and nausea. After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained below.

(AR 35) (citation omitted).

The ALJ first discussed the record evidence in regard to Plaintiff's cervical spine, finding that she "generally demonstrated a normal range of motion in the cervical spine," that there was "little evidence that any surgical intervention has been recommended," and that the record reflected that "she made good progress with physical therapy." (AR 36) (citing Exhibits 1F, 2F, 4F, 9F, 13F, 15F, 17F).

The ALJ then discussed Plaintiff's lumbar spine, finding that she "generally demonstrated a normal range of motion in the lumbar spine." The ALJ noted that Plaintiff "exhibited normal neurologic function," that she underwent lumbar spine surgery in July 2017 which appeared to be successful, that lumbar imagery showed positive results, that she had made significant progress with physical therapy with resulting improvement in back and leg pain, and that there was "little evidence that she required any assistive device for ambulation on an ongoing basis," rather that she

1  "generally had a normal gait and could ambulate without assistance." (AR 36) (citing Exhibits 1F,

2  2F, 3F, 4F, 9F, 13F, 14F, 15F, 17F).

3      Next, the ALJ discussed Plaintiff's hips, finding that she "generally demonstrated normal

4  ranges of motion in the hips and adequate strength in the lower extremities. The ALJ noted that

5  there was "little evidence that any surgical intervention has been recommended for her hip

6  osteoarthritis" and "that she required any assistive device for ambulation on an ongoing basis …

7  prior to June 2018, she generally had a normal gait and could ambulate without assistance." (AR

8  36) (citing Exhibits 2F, 3F, 4F, 7F, 9F, 13F, 17F). Additionally, the ALJ included "sedentary work"

9  as a limitation in the RFC. (AR 40).

10     Turning to migraine headaches, the ALJ found that Plaintiff's headaches "admittedly have

11  been under adequate control since she learned how to manage them in physical therapy." (AR 36)

12  (citing Exhibit 15F). As to vertigo, the ALJ found similarly, namely that Plaintiff's vertigo

13  "admittedly has significantly improved since she learned how to manage it in physical therapy."

14  (AR 37) (citing Exhibit 15F and AR 63).

15     While the ALJ's analysis set forth above is properly supported, the ALJ did not mention

16  Plaintiff's need to nap or rest often through the day nor the side effects of Plaintiff's medications –

17  namely drowsiness, sleepiness, and nausea – when evaluating her symptom testimony. The ALJ's

18  opinion is devoid of any basis (whether specific, clear, convincing, or otherwise) for her rejection

19  of this testimony. Nor does Defendant address this in briefing. (*See* Doc. 15). As such, the ALJ

20  did not clearly set forth what evidence undermines these complaints.

21     The only language that the ALJ includes in her opinion that arguably pertains to these

22  complaints is as follows:

23         The claimant has described daily activities that are not limited to the
           extent one would expect, given the complaints of disabling
24         symptoms and limitations. Despite her physical impairments, she is
           essentially independent in personal care and is able to prepare
25         simple meals, perform light housework, do laundry, and help take
           care of pets. In addition, despite the allegations of symptoms and
26         limitations preventing all work, the record reflects that she went on
           a trip to Hawaii in early 2018. Although trips and disability are not
27         necessarily mutually exclusive, long-distance travel typically
           requires some physical capacity to prepare and execute.
28

(AR 37) (citations omitted).  However, the ALJ mentions only "physical impairments" and "allegations of symptoms and limitations preventing all work."  Thus, it is unclear if the ALJ is addressing Plaintiff's symptom testimony regarding drowsiness, sleepiness, nausea, and her need to nap or rest.  Because the language is unspecific and general.  Additionally, even if the undersigned were to assume that the ALJ is addressing such testimony, merely citing Plaintiff's general daily activities and her trip to Hawaii, without any further elaboration, does not meet the applicable standard required to reject Plaintiff's symptom testimony.  *See Varney v. Sec'y of Health & Hum. Servs.*, 846 F.2d 581, 585 (9th Cir. 1988) (holding that when a plaintiff testifies she is experiencing a side effect known to be associated with a particular medication, the ALJ may disregard the testimony only if she "support[s] that decision with specific findings similar to those required for excess pain testimony …").

Though the ALJ may properly reject Plaintiff's testimony by citing daily activities that contradict her testimony,[3] it is unclear how activities such as preparing simple meals, performing light housework, doing laundry, taking care of pets, and a one-time trip to Hawaii discredit symptom testimony regarding drowsiness, sleepiness, nausea, and a need to nap or rest in regards to Plaintiff's ability to work.  *See Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001) ("the mere fact that a plaintiff has carried on certain daily activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in any way detract from her credibility as to her overall disability"); *see also Donna C. v. Comm'r, Soc. Sec. Admin.*, No. 1:23-CV-01513-MC, 2024 WL 4528190, at *4 (D. Or. Oct. 17, 2024) (finding where ALJ improperly rejected plaintiff's testimony about gabapentin making her tired and sleepy, the ALJ was required to "support the decision with specific findings … side-effects may significantly impact an individual's ability to function at work," thus an ALJ must "consider side effects of medication … when assessing allegations of disabling symptoms") (quotations omitted) (citing *Varney*, 846 F.2d at 585-586, and 20 C.F.R. § 416.929(c)(3)(iv)).

The ALJ expressly concluded that Plaintiff's medically determinable impairments could reasonably be expected to cause these alleged symptoms, including drowsiness, sleepiness, nausea,

---

[3] *See Orn*, 495 F.3d at 639.

1   and a need to nap or rest.  (AR 35; *see* AR 61, 65-66).  As such, the ALJ was required to give clear

2   and convincing reasons to reject this symptom testimony.  As to these complaints, the ALJ failed

3   to reject Plaintiff's symptom testimony under the applicable standard.  The Court cannot determine

4   what evidence undermines the Plaintiff's complaints nor conclude that the ALJ did not arbitrarily

5   discredit Plaintiff's testimony.  Additionally, as discussed further in subsection (D) (*infra*), this

6   error was not harmless as inclusion of limitations resulting from such symptom testimony may have

7   altered the RFC and resulted in different hypotheticals posed to the vocational expert.  *See Donna*

8   *C.*, *supra*, 2024 WL 4528190.

9       **C.  Whether the ALJ Erred by Improperly Rejecting Lay Witness Testimony**

10      Plaintiff argues that the ALJ failed to give specific and legitimate reasons germane to the

11  testimony of lay witness Sherry Linn Robbins, the Plaintiff's mother, when rejecting her testimony.

12  (Doc. 11 at 18-20).  The parties disagree as to the applicable standard required when rejecting such

13  testimony.  (*See* Doc. 15 at 17-21).

14      Ms. Robbins completed a function report on February 6, 2018.  (AR 279-286).  The ALJ

15  found that the "the assessment of the claimant's functioning is not persuasive because the

16  claimant's friend is not an acceptable medical source and lacks the medical proficiency to render a

17  reliable opinion on the claimant's limitations."  The ALJ found the "observations and opinions of

18  trained medical professionals to be more persuasive.  In addition, the assessment is inconsistent

19  with the generally normal musculoskeletal and neurologic function documented in the medical

20  records."  (AR 38) (citations omitted).

21      The undersigned notes that, at the time of the parties' briefing, it was an "open question

22  whether ALJs are still required to consider lay witness evidence under the revised regulations,"

23  although it is settled an ALJ need not articulate her consideration of such evidence in a decision.

24  *Fryer v. Kijakazi*, No. 21-36004, 2022 WL 17958630, at *3 n.1 (9th Cir. Dec. 27, 2022).  In the

25  recent case of *Hudnall v. Dudek*,[4] the Ninth Circuit clarified that nonmedical sources, to include

26  lay testimony from friends and family, are still to be considered in determining the consistency of

27  medical opinions or prior administrative medical findings; nonetheless, the regulations expressly

28

---

[4] 130 F.4th 668 (9th Cir. 2025).

allow ALJs to discount nonmedical evidence without any explanation. *Id.* at 670-71. However, the Ninth Circuit later withdrew the *Hudnall* decision. *Hudnall v. Dudek,* 133 F.4th 968 (9th Cir. 2025); *see Hudnall v. Dudek*, No. 23-3727, 2025 WL 1379101, at *1 (9th Cir. May 13, 2025) (declining to resolve the issue of standard applicable to an ALJ's review of nonmedical testimony). As such, it appears the consideration of lay witness evidence under the revised regulations is again an open question. Defendant asserts that Plaintiff cites caselaw predating the revised regulations and that the line of cases requiring ALJs to "articulate germane [reasons] should not survive, because it conflicts with express language in the revised regulations …" (Doc. 15 at 19-20). As discussed below, the Court need to not resolve this dispute here.

Ms. Robbins describes Plaintiff's limitations as "vertigo, dizziness, excessive falling down – neck swelling, back surgery, migraine headaches, [traumatic] head injury, concussion [and] coning of [eyes]." (AR 279). She states that Plaintiff's conditions "usually [put] her back to bed, [especially] with side effects with the medications [prescribed]." She mentions, under question 14 asking of conditions affecting Plaintiff's sleep: "sleep disorder" and "nauseous." (AR 280). She lists "drowsiness" as a side effect of Plaintiff's medications. (AR 286).

The Ninth Circuit holds that an ALJ is not required provide specific reasoning when rejecting lay witness testimony where such testimony was similar to the Plaintiff's own subjective complaints, which the ALJ provided clear and convincing reasons for rejecting. *See Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 694 (9th Cir. 2009) ("the ALJ provided clear and convincing reasons for rejecting [plaintiff's] own subjective complaints, and because [the lay witness'] testimony was similar to such complaints, it follows that the ALJ also gave germane reasons for rejecting [the lay witness'] testimony").

Here, the ALJ provided clear and convincing reasons to reject a portion of Plaintiff's subjective complaints. *See Andreha Nicole U. v. King*, No. 1:24-CV-00136-DCN-REP, 2025 WL 697178, at *12 (D. Idaho Feb. 5, 2025), *report and recommendation adopted*, No. 1:24-CV-00136-DCN-REP, 2025 WL 693184 (D. Idaho Mar. 4, 2025) ("As long as the ALJ gives legally sufficient reasons for rejecting the Petitioner's testimony, the ALJ need only point to those reasons when rejecting similar testimony by a lay witness.") (quotations and citations omitted).

However, the ALJ did not provide clear and convincing reasons to reject Plaintiff's testimony regarding sleepiness, drowsiness, nausea, and a need to nap or rest, as explained above in subsection (B). As such, the ALJ cannot point to any such reasons to reject the lay witness testimony of Ms. Robbins regarding said complaints.

Another judge of this Court recently has credited Defendant's interpretation of the revised regulations. *See, e.g.*, *Gausling v. Comm'r of Soc. Sec.*, No. 2:24-CV-0301-DMC, 2025 WL 347280, at *11 (E.D. Cal. Jan. 30, 2025) ("The Court agrees with the Commissioner that the new regulatory framework requires an ALJ to consider lay testimony but does not necessarily require her to articulate how she considered it."). The *Gausling* court found that the ALJ did consider lay witness testimony because the ALJ summarized such testimony within her report. In contrast here, there is no such summary from the ALJ which includes mention of Ms. Robbins' testimony of "sleep disorder," "nauseous," and "drowsiness." (*See* AR 38).

Thus, the undersigned need not decide whether the ALJ was required by Ninth Circuit precedent to provide germane reasons in rejecting said testimony, or whether the revised regulations only required the ALJ to consider such testimony, as the ALJ failed to meet either standard. *Cf. Fryer*, 2022 WL 17958630, at *3 n.1 ("We need not address" the extent to which an ALJ must consider lay witness testimony because "[i]t is clear the ALJ evaluated Fryer's husband's function reports, as he references the reports elsewhere in the decision.").

### D. Whether the ALJ Improperly Omitted Medical Opinion Limitations, Plaintiff's Symptom Testimony, and Lay Witness Testimony from the RFC and Hypotheticals Posed to the Vocational Expert

Plaintiff asserts that the ALJ omitted limitations assessed by the record in the hypotheticals she posed to the vocational expert and, as such, the testimony from the expert regarding Plaintiff's ability to perform the provided occupations has no evidentiary value and is, thus, without substantial evidence. (Doc. 11 at 20).

It is the ALJ's responsibility to translate a plaintiff's condition and limitations into an RFC that "adequately captures restrictions" to the Plaintiff's ability to work. *Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1174 (9th Cir. 2008). An RFC that fails to include all of a plaintiff's credible

limitations and any subsequent opinion of a vocational expert is "incomplete."  *See Bagby v. Comm'r Soc. Sec.*, 606 Fed. Appx. 888, 890 (9th Cir. 2015).  An ALJ need not use the same language as the medical opinion setting forth the limitations, as long as the RFC sufficiently accounts for the limitations.  *See Stubbs-Danielson*, 539 F.3d at 1173-1174.  When determining a plaintiff's limitations, the ALJ must consider all factors that might have a significant impact on her ability to work, including the side effects of medication.  *Erickson v. Shalala*, 9 F.3d 813, 817–818 (9th Cir. 1993).

As noted above in subsection (A), the ALJ rejected certain limitations in the opinions of Drs. Rand and Pham with substantial evidence.  It follows that she need not have included them in her posed hypotheticals.  As to Plaintiff's symptom testimony and lay witness testimony, as noted above in subsections (B) and (C), the ALJ provided clear and convincing reasons for rejecting a portion of Plaintiff's complaints, and accordingly the corresponding lay witness testimony, but failed to do so in regard to Plaintiff's testimony relating to sleepiness, drowsiness, nausea, and a need to nap or rest.  Regarding said complaints, since the ALJ erred in rejecting them by not providing identifiable reasoning, the ALJ may have erred in failing to pose them to the vocational expert.

On this point, the case of *Burger v. Astrue*[5] is instructive.  The *Burger* court noted that the plaintiff testified at the hearing that she was often sleepy due to the medication she takes and sometimes had digestive issues, which could also be side effects from the medication.  The court found that the ALJ mischaracterized the evidence and committed legal error in rejecting said testimony when determining the RFC, which was not supported by substantial evidence.  The court further found that the vocational expert's testimony, based on the faulty RFC, had no evidentiary value.  As a result, the court remanded the action.

Here, a review of the hearing transcript evidences that the ALJ did not provide specific limitations related to sleepiness, drowsiness, nausea, and a need to nap or rest.  The ALJ posed a hypothetical including a limitation where an individual would be inconsistent in her production pace or be unable to keep up with a normal production pace.  The vocational expert concluded that,

---

[5] 536 F. Supp. 2d 1182 (C.D. Cal. 2008).

1   in her opinion, such an individual would not be able to maintain competitive employment.  (AR

2   78).  Plaintiff's counsel posed a hypothetical where an individual would miss work "about four

3   times per month."  The vocational expert concluded that such an individual could not maintain full-

4   time employment.  (AR 79).

5       Thus, due to the ALJ's failure to provide clear and convincing reasons to reject Plaintiff's

6   testimony regarding sleepiness, drowsiness, nausea, and a need to nap or rest, the RFC is not

7   supported by substantial evidence.  It follows that the vocational expert's testimony has no

8   evidentiary value.  This error is not harmless because, as noted by the hypotheticals above, inclusion

9   of limitations relating to said symptom testimony may result in a finding that Plaintiff is disabled.

10                          *       *       *       *       *

11      In sum, the ALJ's discounting of the limitations in the opinions of Drs. Rand and Pham was

12  supported by substantial evidence.  The ALJ erroneously failed to provide clear and convincing

13  reasons to reject Plaintiff's symptom testimony regarding her sleepiness, drowsiness, nausea, and

14  need to nap or rest.  The ALJ erroneously failed to acknowledge receipt of certain lay witness

15  testimony.  Lastly, the ALJ's RFC was not supported by substantial evidence and, as such, the

16  vocational expert's testimony had no evidentiary value.

17      The decision whether to remand for further proceedings or simply to award benefits is

18  within the discretion of the Court.  *See Salvador v. Sullivan*, 917 F.2d 13, 15 (9th Cir. 1990).

19  Remand for further proceedings is warranted where additional administrative proceedings could

20  remedy defects in the decision.  *See Kail v. Heckler*, 722 F.2d 1496, 1497 (9th Cir. 1984).  Remand

21  for the payment of benefits is appropriate where no useful purpose would be served by further

22  administrative proceedings;[6] where the record has been fully developed;[7] or where remand would

23  unnecessarily delay the receipt of benefits to which the disabled Plaintiff is entitled.[8]

24      Here, Plaintiff seeks an order from the Court awarding benefits (Doc. 11 at 20-21) and the

25  Commissioner argues that the Court should affirm the ALJ's decision finding Plaintiff not disabled

26  (Doc. 15 at 24).  The Court concludes that remand for further proceedings is warranted because

27

28
_____
[6] *Kornock v. Harris*, 648 F.2d 525, 527 (9th Cir. 1980).
[7] *Hoffman v. Heckler*, 785 F.2d 1423, 1425 (9th Cir. 1986).
[8] *Bilby v. Schweiker*, 762 F.2d 716, 719 (9th Cir. 1985).

additional administrative proceedings may remedy the deficiencies in the ALJ's decision noted herein.

## IV.    CONCLUSION

Accordingly, IT IS HEREBY ORDERED that:

1.    Plaintiff's motion for summary judgment (Doc. 11) is GRANTED;

2.    Defendant's cross-motion for summary judgment (Doc. 15) is DENIED;

3.    This matter is REMANDED pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this decision; and

4.    The Clerk of the Court shall enter judgment in favor of Plaintiff and against Defendant, terminate any deadlines, and close this case.

IT IS SO ORDERED.

Dated:   __**May 22, 2025**__                  _____

UNITED STATES MAGISTRATE JUDGE